# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# MONROE DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CASE NO. 3:24-CR-00167-01** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **DEMARIO MONTRELL RODGERS (01)** | **MAG. JUDGE KAYLA D. MCCLUSKY** |

## MEMORANDUM ORDER

Before the Court is a Motion to Dismiss Indictment [Doc. No. 17] filed by Defendant Demario Montrell Rodgers ("Rodgers"). An Opposition [Doc. No. 26] was filed by the United States (the "Government"). Rodgers filed a Reply [Doc. No. 29].

### I. BACKGROUND

On August 7, 2024, Rodgers was charged in the Western District of Louisiana with Felon in Possession of a Firearm in violation of 18 U.S.C. § 922(g)(1).[1] On October 4, 2024, Rodgers filed the instant motion.

In his Motion to Dismiss, Rodgers argues 18 U.S.C. § 922(g)(1) is unconstitutional as applied to Rodgers under the Second Amendment to the United States Constitution, pursuant to the Supreme Court of the United States cases of *New York Rifle and Pistol Association, Inc. v Bruen*, 597 U.S. 1 (2022) (*"Bruen"*), *United States v Rahimi*, 144 S.Ct. 1889 (2024) (*"Rahimi"*), and the Fifth Circuit Court of Appeals case of *U.S. v. Diaz*, 116 F. 4th 458 (5th Cir. 2024) ("*Diaz*").

### II. LEGAL ANALYSIS

#### A. *Heller* and *Bruen*

In *Bruen*, the Supreme Court held that when determining whether a firearm restriction is constitutional, the Court should first determine whether the Second Amendment's plain text covers

---

[1] [Doc. No. 1].

the individual's conduct. If it does, the Constitution presumptively protects the conduct. To justify the regulation, the Government must demonstrate that the regulation is consistent with the United States' historical tradition of firearm regulation. Although the Supreme Court previously held the Second Amendment conferred an individual right to keep and bear arms, *District of Columbia v. Heller*, 554 U.S. 570 (2008), *Bruen* set forth the test to determine the constitutionality of a firearm regulation.

In *Heller*, the Supreme Court held the Second Amendment conferred an individual right to keep and bear arms. In discussing the right, the court stated:

> Although we do not undertake an exhaustive historical analysis today of the full scope of the Second Amendment, **nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons** and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms.

554 U.S. at 626-27 (emphasis added). The above language referenced footnote 26, which reads, "We identify these **presumptively lawful regulatory measures** only as examples; our list does not purport to be exhaustive." *Id*. (emphasis added).

In *Bruen*, Justice Samuel Alito concurred, holding:

> That is all we decide. Our holding decides nothing about who may lawfully possess a firearm or the requirements to buy a gun. Nor does it decide anything about the kinds of weapons that people may possess. **Nor have we disturbed anything that we said in *Heller* or *McDonald v. Chicago*, 561 U.S. 742, (2018) about restrictions that may be imposed on the possession or carrying of guns**.

142 U.S. at 2157 (J. Alito, concurring) (emphasis added).

Additionally, in a concurring opinion by Justice Kavanaugh, joined by Chief Justice Roberts, Justice Kavanaugh also **cited the language in *Heller*, stating that it did not cast doubt**

**on the longstanding prohibitions, on possession of firearms by felons** and the mentally ill. *Id*. at 2162 (emphasis added).

In *Bruen*, three Justices (Roberts, Alito, and Kavanaugh) all confirmed what was said in *Heller* about not affecting the prohibition of possession of firearms by felons. No justice who voted to implement the *Bruen* test stated differently.

This Court previously ruled that it was only necessary to examine the first step in *Bruen* because the Second Amendment's plain text does not cover the conduct of convicted felons.[2] However, in *Diaz* the Fifth Circuit found the mention of "felons" in *Bruen* and *Heller* was "mere dicta" requiring an examination of *Bruen's* second step. Therefore, this Court will examine *Bruen's* second step, which requires the Government to demonstrate the regulation is consistent with the United States' historical tradition of firearm regulation. As applied to Rodgers, the question is whether regulation of possession of firearms by convicted felons is consistent with the United States' historical tradition of firearm regulation.

### B.    *Rahimi and Diaz*

In *Rahimi*, the Supreme Court upheld the constitutionality of 18 U.S.C. § 922(g)(8), which makes illegal the possession of a firearm by a person who was subject to a domestic restraining order. *Rahimi* expanded on the analysis to be used in *Bruen's* second step, which requires the Government to demonstrate that the regulation is consistent with the United States' historical tradition of firearm regulation. Once a determination is made by the Court that the Second Amendment covers the conduct prohibited, the burden shifts to the Government to demonstrate that the regulated conduct is consistent with the Nation's historical tradition of firearm regulation.

---

[2] *U.S. v. Bradley,* 2024 WL 1557395 (W.D. La., April 10, 2024).

In discussing this step, the Supreme Court held that the Government must "identify a well-established and representative historical analogue, not a historical twin."[3] Additionally, the Supreme Court stated evidence must be "relevantly similar" to the challenged law. In assessing similarity, we consider "whether modern and historical regulations impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified."[4] The Supreme Court found surety laws and "going armed" laws showed regulating a person subject to protective order were consistent with the United States historical tradition of firearm regulation.

The Supreme Court further found regulations restricting persons subject to restraining orders from possessing firearms did not violate the Second Amendment.

In *Diaz*, Diaz was charged with possessing a firearm as a convicted felon in violation of 18 U.S.C. § 922(g)(1). Diaz filed a Motion to Dismiss, alleging the statute violates the Second Amendment, both facially and as applied to him. Diaz was found in possession of a .45 caliber pistol, along with baggies of methamphetamine, Xanax, and heroin.

The Court examined Diaz's prior convictions, which were theft of a vehicle and possession of a firearm as a felon in state court. In examining *Bruen's* first step, the *Diaz* court first found that Diaz (as a convicted felon), was among "the people" protected by the Second Amendment.[5]

The *Diaz* court then went into *Bruen's* second step, which required a determination of whether the regulation was consistent with the United States' historical tradition of firearm regulation. In this analysis, the court found it necessary to examine Diaz's specific prior convictions, and the court noted that felonies only included charges that were punishable by more

---

[3] 144 S.Ct. at 1898.
[4] *Id*.
[5] 116 F. 4th at 466.

than one year. Therefore, the *Diaz* court only considered the regulation of car theft and possession of a firearm as a felon in step two of the *Bruen* analysis.[6]

In upholding a § 922(g)(1) conviction predicated on a felony theft conviction, the *Diaz* court relied on three categories of historical analogues: (i) historical laws that authorized capital punishment and estate forfeiture as consequences of felonies, (ii) two proposals from state constitutional conventions that excluded those deemed dangerous from the right to bear arms, and (iii) the colonial era "going armed" laws first discussed in *Rahimi* that "prohibited going armed offensively and authorized forfeiture of weapons as punishment."[7] Notably, all three categories of analogues discussed in *Diaz* considered the consequences of committing certain crimes which encompassed forfeiture of the right to bear arms. Therefore, the court found regulating felons convicted of car theft did not violate the Second Amendment because regulation of car theft was consistent with the United States' historical tradition of firearm regulation.[8]

The court then examined whether the regulation of possession of a firearm by a convicted felon was consistent with the United States' historical tradition of firearm regulation. The court found that felonies were punishable by death and/or weapon forfeiture. The court also examined writings and proposals from state constitutional conventions. The court found the right to bear arms was not unlimited and that the Government could prevent people who had committed crimes or were "quarrelsome" from accessing weapons.[9] Therefore, the court also found the regulation of felons convicted of possession of a firearm by a felon was consistent with the United States' historical tradition of firearm regulation.

---

[6] 116 F. 4th at 467.
[7] *Id.*
[8] *Id.* at 469-70.
[9] *Id.* at 470-71.

Several cases have followed the *Diaz* analysis.[10] So will this Court.

### C. Application to Rodgers

Rodgers is charged with Possession of a Firearm by a Convicted Felon in violation of 18 U.S.C. § 922(g)(1). In accordance with *Diaz*, the plain text of the Second Amendment covers Rodgers's conduct. Therefore, the Second Amendment presumptively protects the conduct.

*Bruen's* Second Step requires the Government to demonstrate the regulation is consistent with the United States' historical tradition of firearm regulation. Rodgers's prior convictions were for unauthorized entry into an inhabited dwelling, false representation of a controlled substance, illegal possession of a stolen firearm, aggravated flight from an officer, possession of a firearm by a convicted felon, and three misdemeanor convictions for domestic violence-related conduct.[11] *Diaz* held that regulation of a Possession of a Firearm by a convicted felon conviction was consistent with the United States' historical tradition of firearm regulation since felonies were punishable by death, weapon forfeiture, and based upon various writings and proposal in state constitutions. This Court finds the same.

Although *Diaz* did not address the same offenses as Rodgers's convictions, because Rodgers establishes the requisite nexus to public safety through his prior convictions and because the prior convictions are felonies that are punishable by the death penalty and/or estate forfeiture, the regulation thereof is consistent with the United States' historical tradition of firearm regulation.

The court found the defendant's permanent disbarment of firearms was justified based upon serious crimes showing the defendant may pose a risk of violence or danger to the public. In

---

[10] *U.S. v. Collette*, 2024 WL 4457462 (5th Cir. 2024); *U.S. v. Wilson*, 2024 WL 4436637 (E.D. La., Oct. 6, 2024); *U.S. Benkowich*, 2024 WL 4555392 (S.D. Miss., Oct. 23, 2024); *U.S. v. Martinez*, 2024 WL 4508962 (N.D. Tex., Oct. 16, 2024); *U.S. v. Lanier*, 2024 WL 4457110 (W.D. Tex., Sept. 30, 2024); *Krant v. U.S.*, 2024 WL 4544122 (N.D., Tex., Oct. 22, 2024); and *Countreras-Orosiv v. U.S.*, 2024 WL 4341551 (N.D., Tex. Sept. 27, 2024).
[11] [Doc. No. 26].

this case, the crimes Rodgers committed are consistent with the common purpose of *Rahimi* and *Diaz* – the disarming of individuals viewed to be violent or a threat to public safety, which Rodgers clearly presents through these prior offenses.[12]

Likewise, this Court finds that discerning Rodgers's criminal history of prior convictions are consistent with the United States' historical tradition of firearm regulation.

### III.   CONCLUSION

For the reasons set forth herein,

**IT IS ORDERED** that the Motion to Dismiss Indictment [Doc. No. 17] is **DENIED**.

Monroe, Louisiana this 4th day of December 2024.

**TERRY A. DOUGHTY, JUDGE**
**UNITED STATES DISTRICT COURT**

---

[12] *U.S. v. Wilson* 2024 WL 4436637 (E.D. Louisiana, Oct. 6, 2024).